```
================================================================
        IN THE UNITED STATES DISTRICT COURT
      FOR THE MIDDLE DISTRICT OF FLORIDA
            ORLANDO DIVISION
================================================================
```

PARIS BACCHUS, individually          )
and on behalf of THE FAIRY'S         )
ELDERBERRY LLC,                      )
                                     )
        Petitioner,                  )
                                     )  Case No. _____
    v.                               )
                                     )
BLOCK, INC. (f/k/a Square,           )
Inc.), SQUARE CAPITAL, LLC,          )
SQUARE FINANCIAL SERVICES,           )
INC., CFG MERCHANT SOLUTIONS,        )
LLC, and SHOPIFY INC.,               )
                                     )
        Respondents.                 )
                                     )

```
================================================================
      VERIFIED PETITION TO COMPEL ARBITRATION
        AND FOR APPOINTMENT OF ARBITRATOR
    PURSUANT TO 9 U.S.C. Sections 4 AND 5
================================================================
```

COMES NOW Petitioner Paris Bacchus ("Petitioner"), proceeding pro se, individually and on behalf of The Fairy's Elderberry LLC, and respectfully petitions this Honorable Court, pursuant to Sections 4 and 5 of the Federal Arbitration Act, 9 U.S.C. Sections 4-5 ("FAA"), for an Order:

(1)  Compelling Respondents to submit to binding arbitration of all disputes arising from the merchant services agreements between the parties;

(2)  Appointing a neutral arbitrator pursuant to 9 U.S.C. Section 5 due to the failure and constructive refusal of the contractually designated arbitration forum to act; and

(3)  Granting such other and further relief as this Court deems just and proper.

In support thereof, Petitioner states as follows:

## I.   PARTIES

----------------------------------------------------------------

1.    Petitioner Paris Bacchus ("Petitioner") is a natural person and sole member of The Fairy's Elderberry LLC, a Florida limited liability company. Petitioner resides at 260 Loraine Drive, Apartment 107, Altamonte Springs, Florida 32714, within the Orlando Division of this District.

2.    Respondent BLOCK, INC. (f/k/a Square, Inc.) ("Block") is a Delaware corporation with its principal place of business at 1955 Broadway, Suite 600, Oakland, California 94612. Block is the parent company and controlling entity of the Square payment processing platform. Block may be served through its registered agents:

> In Delaware:
> The Corporation Trust Company
> 1209 Orange Street, Corporation Trust Center
> Wilmington, Delaware 19801
>
> In Florida:
> C T Corporation System
> 1200 South Pine Island Road
> Plantation, Florida 33324

3.    Respondent SQUARE CAPITAL, LLC (d/b/a Square Capital of California, LLC) ("Square Capital") is a limited liability company organized under the laws of the State of California, with its principal place of business at 1955 Broadway, Suite 815, Oakland, California 94612.(1) Square Capital originated the merchant cash advances ("MCAs") at issue in this proceeding. Square Capital may be served through its registered agent:

> C T Corporation System
> 330 North Brand Boulevard, Suite 700
> Glendale, California 91203

4.    Respondent SQUARE FINANCIAL SERVICES, INC. ("Square Financial") is an FDIC-insured industrial loan company chartered under the laws of the State of Utah,

FDIC Certificate No. 59177, with its principal place of business at 8 East Broadway, Suite 600, Salt Lake City, Utah 84111. Square Financial holds the banking charter that enables all Square payment processing and lending operations.

5.    Respondent CFG MERCHANT SOLUTIONS, LLC ("CFG") is a limited liability company with its principal place of business at 32 Old Slip, Suite 600, New York, New York 10005.(2) CFG originated additional merchant cash advances against Petitioner's business and filed a UCC-1 financing statement against Petitioner on or about October 4, 2024.

6.    Respondent SHOPIFY INC. ("Shopify") is a corporation organized under the laws of Canada, with its principal place of business at 151 O'Connor Street, Ground Floor, Ottawa, Ontario K2P 2L8, Canada. Shopify's United States agent for service of process is Corporation Service Company, 251 Little Falls Drive, Wilmington, Delaware 19808. Shopify participated in the broader ecosystem of merchant fund withholding and MCA stacking at issue in this proceeding.

---

FOOTNOTES:

(1) California Department of Financial Protection and Innovation License No. CF9901206.

(2) CFG's former address, which may appear on the October 2024 UCC-1 filing, was 180 Maiden Lane, 15th Floor, New York, New York 10038.

---

## II.  JURISDICTION AND VENUE

7.    This Court has subject matter jurisdiction pursuant to Section 4 of the Federal Arbitration Act, 9 U.S.C. Section 4, which provides that a party "aggrieved by the alleged failure, neglect, or refusal

of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28."

8.    This Court has subject matter jurisdiction pursuant to 28 U.S.C. Section 1332(a) (diversity of citizenship). Petitioner is a citizen of the State of Florida. Respondent Block is a citizen of the State of Delaware (state of incorporation) and the State of California (principal place of business). Respondent Square Capital is a citizen of the State of California. Respondent Square Financial is a citizen of the State of Utah. Respondent CFG is a citizen of the State of New York. Respondent Shopify is a citizen of Canada. No Respondent is a citizen of the State of Florida. The amount in controversy exceeds $75,000, exclusive of interest and costs. See 28 U.S.C. Section 1332(a).

9.    This Court additionally has subject matter jurisdiction pursuant to 28 U.S.C. Section 1331 (federal question jurisdiction), as this Petition arises under the Federal Arbitration Act, 9 U.S.C. Sections 1-16, and involves claims arising under the following federal statutes:

> (a) The Electronic Fund Transfer Act, 15 U.S.C. Section 1693 et seq.;
>
> (b) The Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. Section 1962; and
>
> (c) The Bank Secrecy Act, 31 U.S.C. Section 5311 et seq.

10.   Venue is proper in this District pursuant to 9 U.S.C. Section 4 and 28 U.S.C. Section 1391(b)(2), because a substantial part of the events or omissions giving rise to the claims occurred in this District, including without limitation:

(a) Petitioner operated her business in Altamonte Springs, Florida;

(b) The disputed transactions were processed through Petitioner's Florida-based merchant account;

(c) The Florida sales tax trust funds at issue were collected on Florida transactions subject to Fla. Stat. Section 212.15;

(d) The unauthorized ACH debits were drawn from Petitioner's Florida bank account; and

(e) Petitioner suffered the injuries complained of in this District.

11. Venue in the Orlando Division is proper under Local Rule 1.04(b) of the Middle District of Florida because Petitioner resides in Seminole County, which falls within the Orlando Division.

12. FORUM SELECTION CLAUSE IS UNENFORCEABLE. The Square General Terms of Service ("TOS") contain a forum selection clause purporting to require disputes to be filed in the Northern District of California. That clause is unenforceable as applied to this Petition for each of the following independent reasons:

(a) FRAUD AND OVERREACHING EXCEPTION. A forum selection clause "obtained through fraud or overreaching" is unenforceable. M/S Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 15 (1972); see also Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 595 (1991). Here, Block retroactively altered the very instrument containing the forum clause â€" removing fee-shifting provisions and switching the arbitration forum after disputes arose. A party that fraudulently alters a contract cannot enforce the beneficial provisions of that contract.

(b) SELECTIVE ENFORCEMENT / MATERIAL BREACH. A party that materially breaches a contract forfeits the right to enforce its beneficial provisions. See

Nw. Nat'l Ins. Co. v. Donovan, 916 F.2d 372, 377

(7th Cir. 1990). Block cannot enforce the California forum clause while simultaneously repudiating the TOS fee-shifting and AAA designation provisions contained in the same instrument.

(c) CONSENT TO FLORIDA JURISDICTION. Block is registered as a foreign profit corporation in the State of Florida (Florida Department of State Document No. F11000004245, filed October 21, 2011, status: ACTIVE), with registered agent C T Corporation System at 1200 South Pine Island Road, Plantation, Florida 33324. By registering to do business in Florida, Block has consented to the jurisdiction of Florida courts.

(d) ALL OPERATIVE FACTS ARISE IN FLORIDA. Every transaction at issue was processed through Petitioner's Florida business. Petitioner's bank account is in Florida. The sales tax trust funds are owed to the State of Florida. The unauthorized ACH debits were drawn from a Florida bank. Florida law governs the usury, civil theft, FDUTPA, and sales tax trust fund claims. Transfer to California would impose an unreasonable burden on a pro se litigant proceeding in forma pauperis.

(e) FAA SECTION 4 PROVIDES AN INDEPENDENT BASIS. The FAA authorizes petitions in "any United States district court which, save for such agreement, would have jurisdiction under title 28." 9 U.S.C. Section 4. This Court has independent diversity jurisdiction under 28 U.S.C. Section 1332 and federal question jurisdiction under 28 U.S.C. Section 1331. The FAA does not incorporate contractual forum selection clauses into its jurisdictional framework.

III.  THE ARBITRATION AGREEMENT
------------------------------------------------------------------

13.  At all relevant times, Petitioner's use of the Square payment processing platform was governed by the Square General Terms of Service ("TOS"). The TOS in effect at the time the disputes arose contained a mandatory arbitration clause requiring that all disputes be submitted to binding arbitration administered by the American Arbitration Association ("AAA") under its Commercial Arbitration Rules.

14.  Section 22 of the October 2021 TOS, which governed the merchant relationship at the time the wrongful conduct commenced, provided in pertinent part:

"Square will pay all arbitration fees."
A true and correct copy of the relevant TOS provisions is attached as Exhibit A to the Declaration of Paris Bacchus, filed concurrently herewith.

15.  The arbitration agreement is valid, enforceable, and covers the disputes at issue in this proceeding. Respondents have not contested the existence or validity of the arbitration agreement. See 9 U.S.C. Section 2 (written arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract").

IV.  THE DISPUTE REQUIRING ARBITRATION
------------------------------------------------------------------

16.  The substantive dispute concerns Respondents' systematic misconduct in connection with Petitioner's Square merchant account, including but not limited to:

(a) WITHHOLDING OF MERCHANT FUNDS. Respondents withheld $140,929.15 in merchant proceeds, representing approximately sixty-nine percent (69%) of Petitioner's $204,611.38 in gross revenue processed through the

Square platform.

(b) THEFT OF SALES TAX TRUST FUNDS. Respondents collected $14,269.04 in Florida sales tax from Petitioner's customers â€" funds held in trust for the State of Florida pursuant to Fla. Stat. Section 212.15 â€" and failed to remit those trust funds to the Florida Department of Revenue. The DOR subsequently assessed Petitioner $2,342.90 for the tax Respondents stole.

(c) EXCESSIVE PROCESSING FEES. Respondents charged an effective processing fee rate of 7.28%, versus the disclosed and agreed-upon rate of 2.6% plus $0.10 per transaction â€" a concealed overcharge of approximately 180%.

(d) FALSE TAX REPORTING. Respondents filed a false Form 1099-K with the Internal Revenue Service reporting approximately $69,000 in gross proceeds when the actual amount exceeded $128,000.(3)

(e) EVIDENCE DESTRUCTION AND SPOLIATION. On or about July 22, 2025, Respondents destroyed Petitioner's transaction records and simultaneously disabled the CSV export function for Petitioner's merchant account â€" after Petitioner formally demanded production of complete records.

(f) UNAUTHORIZED ACH DEBITS. Respondents continued unauthorized ACH debits on September 12 and October 1, 2025, after Petitioner formally revoked ACH authorization, in violation of the Electronic Fund Transfer Act, 15 U.S.C. Section 1693f.

(g) FALSE STATEMENTS TO A FEDERAL AGENCY. On or about October 7, 2025, Respondents submitted contradictory statements to the Consumer Financial Protection Bureau ("CFPB"), simultaneously denying knowledge of Petitioner's account while disclosing

details of seven (7) loan applications associated with that same account.

(h) CRIMINAL USURY. Respondents issued seven (7) merchant cash advances at effective annual percentage rates exceeding 150%, constituting criminal usury under Fla. Stat. Section 687.071 (establishing a 25% threshold for criminal usury in the State of Florida).

(i) MCA STACKING OVER EXISTING LIENS. Respondents issued three (3) additional MCAs after CFG Merchant Solutions filed a UCC-1 financing statement against Petitioner on October 4, 2024, without conducting a lien search â€" a practice known in the industry as "MCA stacking."

(j) RETROACTIVE ALTERATION OF CONTRACT TERMS. Respondents retroactively altered the TOS to reverse fee-shifting provisions and switch the arbitration forum from AAA to National Arbitration and Mediation ("NAM") after the disputes arose â€" a classic indicia of bad faith. See Doctor's Assocs., Inc. v. Casarotto, 517 U.S. 681, 687 (1996) (courts scrutinize arbitration provisions for indicia of procedural and substantive unconscionability).

---

FOOTNOTES:

(3) The false 1099-K was also sent to the wrong address (229 Loraine Drive rather than 260 Loraine Drive), further evidencing reckless disregard for accuracy in Respondents' tax reporting obligations.

---

17.   These facts give rise to causes of action under the following federal and state statutes:

FEDERAL CLAIMS:

* RICO, 18 U.S.C. Section 1962(c) and (d) (pattern of racketeering activity through a criminal enterprise);

* Wire Fraud, 18 U.S.C. Section 1343;
* Obstruction / Destruction of Records, 18 U.S.C.
  Section 1519;
* Electronic Fund Transfer Act, 15 U.S.C.
  Section 1693f (unauthorized electronic fund
  transfers);

STATE CLAIMS (FLORIDA):

* Civil Theft, Fla. Stat. Section 772.11;
* Criminal Usury, Fla. Stat. Section 687.071;
* Deceptive and Unfair Trade Practices ("FDUTPA"),
  Fla. Stat. Section 501.204;
* Sales Tax Trust Fund Theft, Fla. Stat.
  Section 212.15;

COMMON LAW CLAIMS:

* Breach of Contract;
* Breach of Fiduciary Duty;
* Fraud and Fraudulent Concealment;
* Conversion; and
* Unjust Enrichment.


    V.  PETITIONER FILED FOR ARBITRATION
        AND THE AAA HAS FAILED TO ACT
-----------------------------------------------------------------

    18.  In May 2026, Petitioner timely filed a Demand for Arbitration with the American Arbitration Association, designated as AAA Case No. 01-26-0003-1512, styled "Bacchus v. Block, Inc. et al."

    19.  In connection with the filing, Petitioner applied for and was granted a partial hardship fee waiver in the amount of $3,106.25, reflecting the AAA's own determination that Petitioner's financial circumstances warranted relief from the full cost of arbitration.

    20.  At the time Petitioner filed the Demand for Arbitration, the AAA fee schedule published on adr.org and in effect was the January 1, 2025 Fee Schedule. Under that schedule, the initial filing fee for a claim in the $150,000 to $300,000 range was $2,975.00.

    21.  Petitioner's hardship waiver of $3,106.25 exceeded the applicable filing fee of $2,975.00 by $131.25. Under the fee schedule in effect at the time of filing, Petitioner owed no balance whatsoever to

initiate arbitration.

22.    On or about May 28, 2026, AAA Case Filing Specialist Kristen Darrow informed Petitioner by electronic mail that the AAA would apply the "current fee schedule" â€" a different, subsequently adopted schedule under which the filing fee for a $300,000 claim is $4,825.00 â€" rather than the schedule in effect at the time of Petitioner's filing. Under this retroactively applied schedule, Ms. Darrow demanded that Petitioner pay an additional $1,718.75 by June 4, 2026, or the case would be "closed."

23.    Petitioner immediately objected in writing, identifying the fee schedule in effect at the time of filing and demonstrating that her approved waiver fully covered the applicable fee. A true and correct copy of the email exchange with Ms. Darrow is attached as Exhibit B to the Declaration of Paris Bacchus.

24.    As of the date of this filing, the AAA has not responded to Petitioner's objection. The AAA has not appointed an arbitrator. The AAA has not issued a preliminary scheduling order. The AAA has taken no action whatsoever to advance the case since its filing.

25.    AAA's retroactive application of an increased fee schedule to a case already filed under a prior schedule, after having granted a hardship waiver that fully covered the original fee, operates as a de facto denial of the arbitration forum to a claimant who has fully complied with all filing requirements. See Green Tree Fin. Corp.-Ala. v. Randolph, 531 U.S. 79, 90 (2000) (arbitration costs that effectively preclude vindication of rights may render arbitration clause unenforceable).

26.    AAA's conduct is particularly troubling given

that Block, Inc. is a repeat, high-volume user of AAA's services, and Block has publicly announced that it is transitioning future consumer disputes to National Arbitration and Mediation ("NAM") â€" effectively terminating its commercial relationship with the AAA. The structural incentive for the AAA to disfavor a pro se claimant in a complex case against a departing corporate customer is self-evident and raises serious questions of institutional bias.(4)

---

FOOTNOTES:

(4) See Jean R. Sternlight, "Repeat Player Effect in Arbitration," 1 J. Empirical Legal Stud. 420 (2004) (documenting systematic advantages enjoyed by repeat corporate users of arbitration forums).

---

   VI.   GROUNDS FOR RELIEF UNDER 9 U.S.C. SECTION 4
----------------------------------------------------------------

   27.   Section 4 of the FAA provides in pertinent part:

> "A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under title 28, in the district in which such arbitration is to take place ... for an order directing that such arbitration proceed in the manner provided for in such agreement."

9 U.S.C. Section 4.

   28.   Respondents have failed, neglected, and refused to arbitrate within the meaning of Section 4. Specifically:

> (a) Block, Inc. has communicated solely through an anonymous electronic mail address (litigation-paralegals@block.xyz) without identifying any attorney of record;
>
> (b) Block has not filed any responsive pleading in the AAA proceeding;
>
> (c) Block has not designated an arbitrator;

(d) Block has not paid its share of the arbitration fees, notwithstanding the TOS provision that "Square will pay all arbitration fees"; and

(e) Block has taken no affirmative step whatsoever to advance the arbitration.

29. This Court should therefore compel Respondents to submit to binding arbitration of all claims set forth in the Fourth Amended Demand for Arbitration. See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp., 460 U.S. 1, 24-25 (1983) (the FAA establishes "a liberal federal policy favoring arbitration agreements" and "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration").

## VII.  GROUNDS FOR RELIEF UNDER 9 U.S.C. SECTION 5
------------------------------------------------------------------

30. Section 5 of the FAA provides:

"If in the agreement provision be made for a method of naming or appointing an arbitrator or arbitrators or an umpire, and such method be not followed ... the court shall designate and appoint an arbitrator or arbitrators or an umpire, as the case may require, who shall act under the said agreement with the same force and effect as if he or she had been specifically named therein."

9 U.S.C. Section 5.

31. The arbitration agreement designates the AAA as the administering forum. The AAA has constructively refused to administer the case by retroactively increasing the filing fee beyond the amount covered by the approved hardship waiver and threatening to close the case if the inflated balance is not paid by June 4, 2026.

32. The "method" for naming an arbitrator under the agreement â€" AAA administration â€" has "not [been] followed" within the meaning of Section 5. The AAA's constructive refusal to proceed triggers this Court's statutory authority to appoint a neutral arbitrator

directly. See 9 U.S.C. Section 5.

33. Petitioner respectfully requests that this Court exercise its authority under Section 5 to appoint a neutral arbitrator with demonstrated expertise in commercial disputes involving payment processing and financial services to hear and determine all claims in this matter.

### VIII.  THE LAPSE-OF-METHOD DOCTRINE
----------------------------------------------------------------

34. When the designated arbitration forum is unavailable or refuses to act, the strong federal policy favoring arbitration requires courts to appoint a substitute arbitrator rather than permit the arbitration agreement to fail. Green Tree Fin. Corp. v. Randolph, 531 U.S. 79, 89-90 (2000). As the Second Circuit has held, "the strong federal policy in favor of arbitration agreements would be thwarted if a court declined to compel arbitration in the absence of the designated arbitrator." Encyclopaedia Universalis S.A. v. Encyclopaedia Britannica, Inc., 403 F.3d 85, 91 (2d Cir. 2005).

35. The Eleventh Circuit â€" binding authority in this District â€" has squarely held that "an arbitration agreement does not become unenforceable merely because the arbitral forum designated in the agreement is unavailable." Brown v. ITT Consumer Fin. Corp., 211 F.3d 1217, 1222 (11th Cir. 2000). Rather, the proper remedy is appointment of a substitute arbitrator under Section 5 of the FAA. Id.

36. Here, the AAA has not formally declined to administer the case, but its conduct â€" retroactively increasing fees, demanding payment of a manufactured shortfall, threatening closure, and refusing to take

any administrative action â€" amounts to a constructive refusal. This Court should therefore exercise its Section 5 authority to appoint a neutral arbitrator and order the arbitration to proceed.

## IX.  REQUEST FOR FEE WAIVER
------------------------------------------------------------------

37.  Petitioner will file concurrently herewith an Application to Proceed In Forma Pauperis pursuant to 28 U.S.C. Section 1915. Petitioner's financial circumstances â€" the same circumstances that necessitated the hardship fee waiver application to the AAA â€" likewise warrant waiver of this Court's filing fee.

38.  The AAA's retroactive fee increase is itself evidence that economic barriers to dispute resolution are being systematically weaponized against a small business owner who cannot absorb unexpected costs â€" the precise scenario that Congress intended Section 1915 to address.

## X.  PRAYER FOR RELIEF
------------------------------------------------------------------

WHEREFORE, Petitioner Paris Bacchus, individually and on behalf of The Fairy's Elderberry LLC, respectfully prays that this Honorable Court enter an Order:

A.  COMPELLING Respondents Block, Inc., Square Capital, LLC, Square Financial Services, Inc., CFG Merchant Solutions, LLC, and Shopify Inc. to submit to binding arbitration of all claims set forth in the Fourth Amended Demand for Arbitration, AAA Case No. 01-26-0003-1512, pursuant to 9 U.S.C. Section 4;

B.  APPOINTING a neutral arbitrator pursuant to 9 U.S.C. Section 5 to preside over the arbitration with the same force and effect as if designated by the

JohnsonI@adr.org
bridget.mccormack@adr.org

PARIS BACCHUS, Pro Se Petitioner
260 Loraine Drive, Apartment 107
Altamonte Springs, Florida 32714
Telephone: (407) 588-0050
Email: pariselderbeary19@gmail.com